UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
LUIS MERCADO,

                       :

            Petitioner,        REPORT & RECOMMENDATION

                       :

       -against-          04 Civ. 2204 (GBD)(MHD)

                       :

WILLIAM H. PHILLIPS,
Superintendent, Green Haven    :
Correctional Facility,

                       :

           Respondent.
-------------------------------x



TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

     <u>Pro</u> <u>se</u> petitioner Luis Mercado seeks a writ of habeas corpus
to challenge his July 17, 1997 judgment of conviction in the New
York State Supreme Court, Bronx County, on a charge of Murder in
the Second Degree. The court sentenced Mercado to a prison term of
25 years to life, and he is currently serving that sentence.

     In support of the petition, Mercado asserts three grounds for
relief. First, he claims that the trial court denied him a fair
trial by its ruling allowing the prosecutor to cross-examine him on
prior criminal or otherwise bad-act conduct. Second, he argues that
he was denied his right to be present for a portion of the jury-
selection process. Third, he contends that he was denied the
effective assistance of appellate counsel, principally because his

attorney briefed an argument that rested on an erroneous understanding of the trial record. Respondent has opposed the petition, contending that the first claim is barred from habeas review and that the other two claims are meritless.

For the reasons that follow we recommend that the writ be denied and the petition dismissed.

Prior Proceedings

Petitioner's conviction stemmed from the October 20, 1992 shooting death of a man named Melvin Gonzalez, Jr. in the vicinity of Stratford and Westchester Avenues in the Bronx. On February 14, 1995 a Bronx grand jury returned an indictment charging Mercado with single counts of second-degree murder, first-degree manslaughter, first-degree criminal use of a firearm and second-degree criminal possession of a firearm. (Kosmetatos Decl. Ex. 12 at 3).

Following the denial of defense motions to suppress (May 21, 1995 Tr. 74-93), Mercado went to trial before the Hon. Peter Benitez (S.C.J.) and a jury, with jury selection commencing on May 22, 1997. During the trial, various eyewitnesses testified that

2

Mercado had been present at a pizza restaurant owned by Mr. Gonzalez's mother, that he had gotten into an argument with Mr. Gonzalez that led to a physical altercation in the street, and that he subsequently retrieved a gun and repeatedly shot Mr. Gonzalez, causing his death. (E.g., Tr. 112-16, 147-50, 153, 156, 160, 200-04, 252-58, 265, 271-76, 279, 287-89, 353-58, 362-63, 386-88, 390-91, 407, 409, 414-18, 420, 431-32). In addition, Mercado's girlfriend testified that he had subsequently admitted to her that he had committed the murder. (Tr. 472-75., 482). Additional evidence showed that after the shooting, Mercado had fled to Boston. (Tr. 475-76, 531). He was finally arrested in Massachusetts in September 1995, three years after the killing. (Tr. 456-57).

At the conclusion of the trial the jury convicted Mercado on the top count of second-degree murder. (Tr. 734-37). Justice Benitez subsequently sentenced him to a term of 25 years to life. (S. Tr. 15-19).

Represented by appointed counsel, Mercado pursued an appeal from the conviction to the Appellate Division, First Department. The history of the appeal is unusually tortuous and forms the basis for Mercado's ineffective-assistance claim.

3

His attorney, Ann Cypher, Esq., initially filed a brief raising two issues. First, she targeted the trial court's pre-trial Sandoval rulings, which had authorized the State to cross-examine Mercado, if he testified, about the circumstances of a 1995 arrest in Massachusetts on unrelated charges -- specifically his reported possession of a gun and crack cocaine -- as well as his use of an alias at the time of his arrest. (Tr. 23-39). In challenging these rulings, petitioner's attorney noted that, as a result of them, Mercado had not testified at trial, and she asserted that the rulings involved an abuse of discretion and had denied petitioner a fair trial. (Kosmetatos Aff. Ex. 1 at 25-30). Second, counsel argued that the trial court had erred in giving the jury an improper and "unrequested" "no adverse inference" charge -- that is, an instruction not to consider the fact that the defendant had not testified. In challenging the instruction, appellate counsel argued that it was error to give any such instruction absent a request by the defense and that in any event the instruction, as given, violated  N.Y. Crim. Proc. L. § 300.10(2) because it mentioned not only that the defendant had not testified, but that he had not called any other witnesses in his defense. (Kosmetatos Aff. Ex. 1 at 31-33).

Petitioner, apparently dissatified with the brief, moved for

4

leave to file a supplemental pro se brief, and on August 3, 2000 the Appellate Division granted his application. (Id. ¶ 8 & Ex. 2). Before filing that supplemental brief, Mercado wrote to his attorney, pointing out that the second point in her brief was inaccurate in stating that trial counsel had not requested a "no adverse inference" charge. He also contended that the balance of the second argument -- concerning the substance of that instruction -- was unpreserved and meritless. In consequence, he demanded that she withdraw the entire second point from the brief. (Id. Exs. 3 & 4). After further correspondence between client and counsel (id. Ex. 5), petitioner moved on November 10, 2000 for a change of counsel and for an extension of his time to perfect the appeal (id. Ex. 6), noting that his attorney's brief as filed erred in stating that trial counsel had not requested the "no adverse inference" charge. (Id. Ex. 6 -- Mercado Aff. ¶¶ 6-7).

By letter dated November 27, 2000, Mercado's attorney withdrew the second point from her brief and explained to the court that the error about the assertedly "unrequested" charge was attributable to an omission of the pertinent pages from the trial transcript that she and the State had been given. (Id. Ex. 8). On December 19, 2000, the court denied petitioner's application for a change of counsel and ordered him to file his supplemental pro se brief. (Id.

Ex. 9). He did so in January 2001, asserting, as an additional claim, that he had been denied his right to be present during a portion of jury selection -- specifically, side-bar colloquy with prospective jurors. (Id. Ex. 10 at 5-11).

The State filed its responding brief in April 2001. (Id. Ex. 11). In that brief it defended the trial court's Sandoval rulings (id. Ex. 11 at 16-25), argued for the propriety of the "no adverse inference" charge (id. at 26-29), and asserted, in response to Mercado's pro se brief, that petitioner had not demonstrated that he had been absent from any of the voir dire. (Id. Ex. 11 at 30-38).

The following month, the prosecutor moved to enlarge the record to include a transcript of Mercado's waiver of his presence at the side bar during voir dire. (Id. Ex. 12). In making this application, the prosecutor reported that she had only recently discovered the fact of the waiver, preserved in an untranscribed set of reporter's notes. (Id. Ex. 12 -- Kosmetatos Aff. ¶ 15). Defense counsel subsequently stipulated her consent to that motion and to the State being given leave to file a supplemental brief to address the newly discovered waiver. (Id. Ex. 14). The Appellate Division then granted that requested relief. (Id. Ex. 15).

6

Before the State had filed its authorized supplemental brief
on the waiver issue, petitioner first filed a pro se reply brief,
in which he dealt only with his claim that he had been denied the
right to be present for most of the side-bar portion of the voir
dire. (Deft's Pro Se Reply Brief at 2-4)[1]. According to petitioner,
the transcript reflected that he had not been present for such
questioning of thirteen out of eighteen panelists. (Id. at 4). The
State in turn filed its authorized sur-reply to point out that
Mercado had waived his presence for the side-bar portion of the
voir dire. (Id. Ex. 16).

On October 18, 2001 the Appellate Division affirmed the
conviction. It held that the trial court's Sandoval rulings
reflected a proper exercise of discretion, and that in any event
any possible error would have been harmless in view of the
overwhelming weight of the evidence of guilt. People v. Mercado,
287 A.D.2d 352, 731 N.Y.S.2d 383 (1st Dep't 2001). The panel also
rejected the claim regarding petitioner's presence at the bench for
portions of the jury selection, noting that he had waived his right
to be present for side-bar discussions during the voir dire. Id.

---

[1] Although respondent annexes a copy of Mercado's pro se
reply brief as Exhibit 13 to the Kosmetatos affidavit, it does
not contain some of the pages from the original. A complete copy
was appended to Mercado's petition.

By letter dated October 23, 2001, defense counsel asked for leave to appeal to the New York Court of Appeals, although the letter did not specify which claims she wished to have reviewed. (Kosmetatos Aff. Ex. 18). Mercado followed up with his own letter to the court, dated November 1, 2001, asking that it review both the Sandoval ruling and his contention that he had been denied the right to be present for the side-bar portion of jury selection. (Id. Ex. 19). The State opposed the application (id. Ex. 20), and the Court of Appeals denied it by order dated December 28, 2001. People v. Mercado, 97 N.Y.2d 685, 738 N.Y.S.2d 301 (2001).

On April 19, 2002, Mercado moved in the Appellate Division for a writ of error coram nobis, contending that he had been denied the effective representation of appellate counsel. (Kosmetatos Aff. Ex. 22). He pressed three criticisms of counsel -- that she had included a frivolous argument in her brief (that is, the challenge to the "no adverse inference" instruction), that she had not consulted petitioner before filing the brief, and that her leave letter to the Court of Appeals had not identified the issues for which she sought review, a level of specificity required to preserve his claims for later federal habeas review. (Id. Ex. 22 -- Deft's Memo of Law at 3-6). The State opposed (id. Ex. 23), and the First Department denied the motion by order on May 29, 2003. People

8

v. Mercado, 305 A.D.2d 1126, 761 N.Y.S.2d 135 (1st Dep't 2003).
Mercado then sought review of that order by the New York Court of
Appeals. (Kosmetatos Aff. Ex. 25). Again the State opposed (id. Ex.
26), and the Court denied the application on August 22, 2003.
People v. Mercado 100 N.Y.2d 597, 766 N.Y.S.2d 172 (2003).

After this final rebuff in state court, Mercado turned to this
court, filing a habeas petition in which he once again challenges
the Sandoval ruling, contends that he had been improperly excluded
from the side-bar questioning of potential jurors and asserts that
his appellate attorney was constitutionally inadequate.

ANALYSIS

Mercado asserts three claims in support of his timely
petition. We first summarize the statutory limits on the scope of
the habeas court's review of challenged state-court decisions, and
then address the merits of his claims.

A. Standard of Review

The stringency of federal habeas review turns on whether the
state courts have passed on the merits of the petitioner's claim,

9

that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. § 2254(d)). "[T]he state court need only dispose of the petitioner's federal claim on substantive [not procedural] grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." Aparicio v. Artuz, 269 F.3d 78, 93-94 (2d Cir. 2001) (citing Sellan, 261 F.3d at 312). Indeed, the state court's decision need not contain any explanation of the reasons for its ruling, and in the absence of any stated rationale the habeas court is to presume that the state court ruled on the merits "in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

If the state court has addressed the merits, the petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94

(2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Besser v.

Walsh, 601 F.3d 163, 178 (2d Cir. 2010); Howard v. Walker, 406 F.3d

114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283 F.3d 492, 497-98

(2d Cir. 2002).


Clearly established federal law "'refers to the holdings, as

opposed to the dicta, of the Supreme Court's decisions as of the

time of the relevant state-court decision.'" Howard, 406 F.3d at

122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)).

"[A] decision is 'contrary to' clearly established federal law 'if

the state court arrives at a conclusion opposite to that reached by

[the Supreme] Court on a question of law or if the state court

decided a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts.'" Id. (quoting Williams, 529

U.S. at 413).


What constitutes an "unreasonable application" of settled law

is a somewhat murkier proposition. "'A federal court may not grant

habeas simply because, in its independent judgment, the "relevant

state-court decision applied clearly established federal law

11

erroneously or incorrectly."'" Id. (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "[s]ome increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)). Accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009). Ultimately a ruling is deemed a reasonable application of precedent "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2009)).

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the

12

burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S., 589 F.3d
at 80-81; McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003). See
generally Rice v. Collins, 546 U.S. 333, 338-39 (2006).


B. The Sandoval Claim


Petitioner claims that the trial court erred in ruling that,
if he testified, the prosecution could cross-examine him about some
of the circumstances surrounding one prior arrest. The court ruled
that the prosecutor could not question Mercado about two old New
York sealed cases or a New York civil restraining order, but
further held that she could conduct some limited questioning of the
defendant about the circumstances of an arrest in Massachusets on
charges of possession of crack cocaine and a firearm.[2] Although the
Massachusetts charges were dismissed when the New York homicide
charge was filed, Justice Benitez held that the State could elicit
the facts that Mercado had used an alias while in Massachusetts and
that he had been in possession of crack and a firearm. (Tr. 23-39).

---

[2] The Massachusetts charges were apparently based on events
postdating the homicide that led to Mercado's current
incarceration. (Tr. 25)

13

In the wake of that ruling, Mercado did not testify at trial, although he challenged the ruling on his state-court appeal. Because petitioner did not testify at trial, however, this claim is not cognizable on habeas review and must be dismissed.

The Supreme Court has unequivocally held, in the context of a federal prosecution, that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Luce v. United States, 469 U.S. 38, 43 (1984). The stated basis for this requirement is the Court's view that, without the defendant's testimony, any possible harm flowing from a court's in limine ruling permitting impeachment by a prior conviction (or prior bad acts) is "wholly speculative." Id. at 41. In other words, when a defendant does not take the stand at trial, the reviewing court has "no way of knowing whether the Government would have sought to impeach with the prior conviction" and cannot "determine the impact any erroneous impeachment may have had in light of the record as a whole." Id. at 42. In sum, a reviewing court is "totally handicapped" in making this determination absent the defendant's testimony. See Biller v. Lopes, 834 F.2d 41, 44 (2d Cir. 1987) (citing Luce, 469 U.S. at 43 (Brennan, J., concurring)).

Although the holding in Luce involved a direct appeal from a

14

federal-court conviction, it has nonetheless been repeatedly applied to a federal habeas court's review of state-court rulings. See, e.g., id. at 44; Ortiz v. Marshal, 2009 WL 3170300, *7 & n.4 (S.D.N.Y. Sept. 30, 2009); Rohit v. Conway, 2007 WL 1540268, *6 & nn. 3-4 (E.D.N.Y. May 24, 2007); Brown v. Filion, 2005 WL 1388053, at *12 (S.D.N.Y. June 13, 2005); Cabassa v. Filion, 2004 WL 1367503, at *8 (S.D.N.Y. June 16, 2004); McEachin v. Ross, 951 F. Supp. 478, 481 (S.D.N.Y. 1997); Zada v. Scully, 847 F. Supp. 325, 328 (S.D.N.Y. 1994); Peterson v. Lefevre, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), aff'd, 940 F.2d 649 (2d Cir. 1991); Carroll v. Hoke, 695 F. Supp. 1435, 1439-40 (E.D.N.Y. 1988), aff'd, 880 F.2d 1318 (2d Cir. 1989); Carrasquillo v. Kirk, 677 F. Supp. 193, 194-95 (S.D.N.Y. 1988). Moreover, altho0ugh Luce involved the use of a prior conviction under Fed. R. Evis. 609, its rationale also applies to cross-examination pertaining to prior criminal condct for which no conviction was obtained. E.g., Grace v. Artuz, 258 F. Supp.2d 162, 171-72 (E.D.N.Y. 2003). Cf. Ohler v. United States, (emphasizing, as did Luce, that trial court is not bound by its pretrial in limine rulings).

Petitioner did not testify at his trial. Necessarily, then, he cannot challenge the constitutional basis of Justice Benitez's Sandoval ruling.

15

C. <u>Petitioner's Right to be Present</u>

In Mercado's <u>pro</u> <u>se</u> supplemental appellate brief, he complained that he had been denied his right to be present during a portion of the jury-selection process, specifically, that he was not present at the bench when the court conducted some of its voir dire of jury panelists at the side bar. In response, the State initially argued that Mercado had not conclusively shown, based on the trial transcripts, that he had been denied access to the side-bar colloquy during those sessions, and that it was not clear that, even sitting at counsel table, he had been unable to hear what was being said at the bench. (Kosmetatos Aff. Ex. 11 at 30-38).

Subsequently, the prosecutors discovered that at an earlier court session, prior to the start of the jury selection, Mercado had explicitly waived his right to be present at the bench for those proceedings. This discovery led to a motion by the State to expand the appellate record to include the pertinent transcript pages, which had apparently not yet been transcribed by the court reporter. (<u>See</u> Kosmetatos Aff. Ex. 14 -- Kosmetatos state-court Aff. ¶ 15). That transcript, which neither side has included in the papers before this court, apparently reflected an unambiguous waiver by Mercado, since his appellate counsel thereafter entered

16

into a stipulation that (1) authorized the inclusion of those pages in the record, (2) described them as containing "defendant's waiver of his right to be present at sidebar conferences with prospective jurors during *voir dire*", and (3) permitted the State to file a supplemental brief, in which it argued for the first time that Mercado had permissibly waived his right to be present for the sidebar discussions. (Kosmetatos Decl. Ex. 15; see id. Ex. 16).

As described in the State's supplemental brief, at a conference on May 21, 1995, the day before jury selection began, the trial court asked for defendant's position on his right to be present for side-bar colloquies during jury selection, and defense counsel represented to the court that he had explained to his client his right to be present at all stages of jury selection, and that his client was willing to waive that right for side-bar discussions with potential jurors. The court then itself summarized for Mercado his so-called Antommarchi rights[3] and confirmed his waiver, as follows:

THE COURT: Mr. Mercado, what we're talking about is that

---

[3] In Antommarchi the New York Court of Appeals held that the defendant has a right to be present at any sidebar questioning of prospective jurors as to their qualifications to sit. See People v. Antommarchi, 80 N.Y.2d 247, 249-50, 590 N.Y.S.2d 33, 35 (1992).

New York law says that where a juror is interviewed by the
Court at a bench conference and sometimes that happens,
most of the jury selection will be done by the jurors
sitting in the jury box being asked questions in open court
but sometimes jurors say that there's something they want
to discuss with the Court privately . . . Of course, the
Assistant District Attorney and your attorney will be
present. Your attorney is saying that you waive may right
to be present during those bench conferences, that you
agree that you will not be present during those
conferences, is that correct?

THE DEFENDANT: That's correct.

THE COURT: Just so you understand, If something is said at
the bench conference which your attorney feels that he
should discuss with you before taking a position on it,
that's up to him whether he feels it's necessary but if he
feels it's necessary and he says he wants to discuss it
with my client before taking the position I will give him
an opportunity to talk to you, let you know what's
happening and to consult with you if he says he wishes to
do so. Do you understand?

DEFENDANT: Yeah. I understand.

(Kosmetatos Decl. Ex. 15 at 3).


    With the compete transcript before the appellate court, the

First Department found that "[t]he record establishes that

defendant waived his right to be present at sidebar discussions

during jury selection." Mercado, 287 A.D.2d at 352, 731 N.Y.S.2d at

383. Thus it rejected Mercado's argument on this point.


    A criminal defendant has a due-process right "to be present at

all stages of the trial where his absence might frustrate the fairness of the proceedings." In re Terrorist Bombings of U.S. Embassies, 552 F.3d 93, 128 (2d Cir. 2008)(quoting Faretta v. California, 422 U.S. 806, 819 n.15 (1975)). As implied by this language, "[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Id. (quoting United States v. Gagnon, 470 U.S. 522, 526 (1985))(italics in original).

The Second Circuit has made clear that the "pre-screening" of jurors -- that is, the process of inquiring into the potential jurors' qualifications to serve -- is a stage of the trial process at which a defendant has the right to be present. See Cohen v. Senkowski, 290 F.3d 485, 489-90 (2d Cir. 2002). See also Gomez v. United States, 490 U.S. 858, 873 (1989); Fed. R. Crim. Proc. 43(a). In contrast, the Second Circuit has observed, the defendant's presence is not required for the "administrative empanelment process", including discussion of the panelists' personal hardship if called upon to serve. See Cohen, 290 F.3d at 490 (citing Gomez, 490 U.S. at 874, and United States v. Greer, 285 F.3d 158, 167-68 (2d Cir. 2002)).

19

In this case respondent appears to argue that petitioner was not entitled, under the Due Process Clause, to be present for the side-bar conferences with potential jurors. (Resp. Memo of Law at 15-17).[4] In so arguing, respondent does not address whether any of the colloquy from which Mercado was excluded involved discussion of the jurors' qualifications -- in which case presumably due-process rights would attach -- but in any event we need not address that question since the defendant may waive his right to be present, see, e.g., Cohen, 290 F.3d at 489 (discussing Tankleff v. Senkowski, 135 F.3d 235, 246-47 (2d Cir. 1998), and Cardinal v. Gorczyk, 81 F.3d 18, 20 (2d Cir. 1996)), and the Appellate Division found that Mercado had waived his right to be present for those discussions.

As noted, such factual findings by the state courts are accorded presumptive deference, and in this case petitioner offers no meaningful basis for questioning the finding of the First Department that he had in fact agreed not to be present for the side bars. Such a waiver, communicated not only by the defense counsel after consultation with his client, but also by the defendant himself after a full and adequate explanation by the

---

[4]At the very least, respondent argues, there is no well-settled precedent so requiring. (See id. at 16-17).

court of his right to be present, is clearly effective to surrender
any claim, made long after the fact, that he was improperly
excluded from side-bar colloquy with potential jurors. See, e.g.,
Cohen, 290 F.3d at 492; Evans v. Ercole, 2010 WL 1506674, *2-3
(S.D.N.Y. April 13, 2010).[5]


### D. Ineffectiveness of Appellate Counsel


Petitioner's remaining claim is that he was denied the
effective representation of appellate counsel. He bases that
contention principally upon the facts -- not disputed on the
current record -- that the brief prepared by his appointed attorney
included an argument that the trial judge had erred in giving the
jury a "no negative inference" instruction that had not been
requested by defense counsel, and that this argument rested on an
erroneous premise since trial counsel had in fact requested such a

---

[5] Although petitioner notes that the May 21, 1997 transcript
that he received -- a copy of which this court also received --
does not contain the waiver, and although respondent has not
proffered to us the pertinent transcript, it is evident from the
record that Mercado's appellate counsel received it and conceded
that it reflected a waiver (Kosmetatos Aff. Ex. 14), and that the
Appellate Division had the transcript available to it when it
found that the defendant had waived his right to be present at
the side bar. Mercado does not demonstrate by clear and
convincing evidence, 28 U.S.C. § 2254(e)(1) -- or indeed even by
a preponderance of the evidence -- that this finding was
erroneous.

charge.

Apart from the baselessness of the "no negative inference"
argument in the attorney's appellate brief, Mercado asserted on his
coram nobis motion -- and we infer that he is arguing here -- that
his lawyer performed inadequately because she did not consult with
him before filing her brief and did not include one or more
arguments that he wished her to advance. (Kosmetatos Aff. Ex. 22 --
Mercado Aff. ¶¶ 1(B) & (C), 6, 7). Apart from Mercado's general
assertion of a lack of consultation, we note that the only argument
that counsel omitted from her brief and that petitioner himself
pursued in his pro se submissions to the Appellate Division and the
New York Court of Appeals was his contention that he had been
denied his right to be present at the side-bar communications
between the trial judge and prospective jurors. Finally, based on
Mercado's coram nobis application, we infer as well that he is
complaining about the formal adequacy of his attorney's leave
application to the New York Court of Appeals, because she did not
explicitly identify the claims for which she was seeking review.
(Id. Ex. 22 -- Mercado Aff. ¶ 7 & Memo of Law at 6).

22

1. <u>Sixth Amendment Criteria</u>

Before addressing the petitioner's various complaints about his counsel's performance, we briefly summarize the applicable Sixth Amendment standards. As we will see, Mercado plainly fails to demonstrate a violation of his right to adequate representation.

To demonstrate a denial of the effective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" <u>Brown v. Artuz</u>, 124 F.3d 73, 79 (2d Cir. 1997) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). As summarized in <u>Brown</u>:

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

<u>Id.</u> at 79-80 (quoting <u>Strickland</u>, 466 U.S. at 690, 694); <u>accord, e.g.</u>, <u>Smith v. Spisak, Jr.</u>, 558 U.S. ___, 130 S. Ct. 676, 685

(2010); Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009); Henry
v. Poole, 409 F.3d 48, 62-64 (2d Cir. 2005); Cox v. Donnelly, 387
F.3d 193, 197 (2d Cir. 2004).

It bears emphasis that the Strickland standard is quite
deferential, and that a claim of constitutional dimension does not
arise unless a lawyer's error is so egregious as to amount to a
failure to provide minimal professional representation. Thus, a
habeas court weighing an ineffective-assistance claim "must judge
the reasonableness of counsel's challenged conduct on the facts of
the particular case, viewed as of the time of counsel's conduct,"
and must "determine whether, in light of all the circumstances,
[counsel's] identified acts or omissions were outside the wide
range of professionally competent assistance." Strickland, 466 U.S.
at 690; accord, e.g., Kimmelman v. Morrison, 477 U.S. 365, 386
(1986); Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). In
making this determination, "the court should recognize that counsel
is strongly presumed to have rendered adequate assistance and made
all significant decisions in the exercise of reasonable
professional judgment." Strickland, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted,
the petitioner must demonstrate "a reasonable probability" that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001)(citing Strickland, 466 U.S. at 694).

A court's evaluation of an appellate attorney's performance is particularly deferential. Appellate counsel is not required to raise every conceivable issue, because "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983); see also McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999)(noting that actions or omissions by counsel that might be considered sound strategy do not constitute ineffective assistance). Thus, to establish a violation of his Sixth Amendment rights, Perez must demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); accord Kalani v. United States, 2002 WL 31453094, *3 (S.D.N.Y. Oct. 31, 2002); Peterson v. Bennett, 2002 WL 1592600, *4 (E.D.N.Y. July 18, 2002).

25

2. Assessment of Mercado's Claim

Petitioner's principal criticism of his attorney does not involve her failure to raise a meritorious argument, but rather her insertion of an argument that was premised on an incorrect factual assumption. This conceded error does not reflect constitutionally inadequate performance by counsel, and in any event petitioner plainly fails to demonstrate prejudice.

The appellate attorney had not represented Mercado at trial. Hence her knowledge of the details of the relevant trial events necessarily turned on the written materials that she received, including the transcript of trial court proceedings. The record reflects that the transcript initially prepared for appeal omitted the segment of the trial in which Mercado's trial lawyer, when questioned by the judge, asked for a "no adverse inference" instruction to be given. (Kosmetatos Aff. Exs. 5, 8). Moreover, according to Mercado's counsel, the incomplete transcript was consecutively paginated, thus effectively concealing from her the fact that the relevant passage had been omitted. (Kosmetatos Aff. Ex. 8). As a result, counsel reasonably assumed that the instruction in question had not been requested by the defense, thus supporting the argument that the trial judge had erred in giving

26

it, since section 300.10(2) specifies that it is to be given only if the defendant requests it.[6] The provision of an unrequested charge of this kind is error and may result in reversal. See, e.g., People v. Smallwood, 212 A.D.2d 384, 384-85, 622 N.Y.S.2d 268, 268 (1st Dep't 1995).

As for the further argument in counsel's brief -- that the instruction was also overly broad in alluding to the absence of any defense witnesses -- that point too was a reasonable one to make. The statute authorizes an instruction only as to the failure of the defendant to testify, and the use of an improperly broad and potentially prejudicial charge that is also unrequested may underscore the harm to the defendant and thus enhance the chances of a reversal. See People v. Celestino, 201 A.D.2d 91, 98-99, 615 N.Y.S.2d 346, 349-50 (1st Dep't 1994). Although Mercado criticized this argument as attempting to assert a claim that was unpreserved at trial -- presumably because defense counsel never objected -- the invocation of an unpreserved argument obviously does not reflect attorney incompetence. Counsel on appeal often argue issues

---

[6] The pertinent provision states: "Upon request of the defendant, but not otherwise, the court must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn." N.Y. Crim. Proc. L. § 300.10(2).

27

that have not been formally preserved in compliance with N.Y. Crim. Proc. L. § 470.05, and they do so, if for no other reason, because the appellate court has the discretion to disregard the defendant's failure to object below if the panel concludes that it would be in the interest of justice to reach the merits of the claim. N.Y. Crim. Proc. L. § 470.15(6)(a). See, e.g., People v. Flores, 30 Misc.3d 135(A), 2011 WL 489581, *2 (S.Ct. App. Term Feb. 10, 2011).

In any event, after counsel learned of her factual error upon being provided with the pertinent transcript pages, she withdrew the argument about the "no adverse inference" instruction. Although, as petitioner points out, she was initially resistant to the idea, she finally did inform the court that she was dropping the jury-instruction argument, and noted that it had been made because of the court reporter's error in not previously including the relevant passage in the official transcript, an error that presumably also infected the copy provided to the State.

While counsel's delay in correcting her briefing error may have been inadvisable, this hardly constitutes a failure by the attorney to provide minimally adequate representation on appeal. Indeed, her overall performance was entirely professional. Thus, we note that the balance of her brief focused on the one arguable

28

issue that was reflected in the trial record, that is, the rulings on the <u>Sandoval</u> issue. Moreover, the main difficulty for petitioner is that the trial record does not reflect any reversible error, and his conviction was supported by overwhelming evidence. That evidence included the eyewitness testimony of a number of individuals who were present for the argument that led to the fight, or for the fight that led to the shooting, or for the shooting itself, as well as the testimony of Mercado's girlfriend that he had admitted committing the murder. In addition, his flight to Boston following the shooting reflected consciousness of guilt. In sum, his appellate counsel did not miss any potentially meritorious arguments.

In any event, even if we were to deem the inclusion of an erroneous jury-instruction argument and its subsequent withdrawal as unprofessional error, that would not save petitioner's claim since he cannot demonstrate prejudice. It can hardly be said that this error meaningfully affected the result of the appeal. The only other argument in the brief involved the <u>Sandoval</u> issue, and there is absolutely no basis to infer that, had the jury-instruction argument never been made, the Appellate Division would have ruled differently on the <u>Sandoval</u> question. As the caselaw cited by the State in its appellate brief made amply clear, the trial court has

29

broad discretion in authorizing references to a defendants prior bad acts as part of the cross-examination, insofar as pertinent to credibility. See, e.g., People v. Walker, 83 N.Y.2d 455, 459, 611 N.Y.S.2d 118, 120 (1994). Moreover, in this case Justice Benitez carefully circumscribed what the State could refer to, precluding any reference to the prior New York cases and to a previous restraining order, and limiting the prosecutor to asking only about the defendant's alleged prior use of an alias and his asserted possession of an unspecified quantity of crack cocaine and a firearm. In any event, the judge's explanation of the basis for allowing those items to be alluded to seems perfectly consistent with New York precedent, as the Appellate Division plainly also found. See, e.g., id. at 460-63, 611 N.Y.S.2d at 121-23 (use of alias relevant to honesty and credibility); People v. Bennette, 56 N.Y.2d 142, 147-48, 451 N.Y.S.2d 647, 649-50 (1982)(other crimes that do not involve dishonesty may be referred to because they might indicate defendant's willingness to place his self-interest "ahead of principle or of the interests of society").

The balance of Mercado's complaints about his attorney are equally fallacious. He asserts that she did not consult him, but the letters between them reflect otherwise and demonstrate simply that counsel did not agree with her client's views as to the

30

appropriate issues to raise. (Defts' Coram Nobis Reply Brief at Exs. A-E)[7]. Moreover, Mercado identifies no meritorious issues that his attorney did not mention. Indeed, the only claim that he advanced in his own pro se appellate briefing was the previously discussed argument about his right to be present during side-bar voir dire proceedings, and for reasons already noted, that claim is plainly meritless.

In petitioner's correspondence with his appellate counsel, he also adverted to possible challenges to the identification testimony of some of the eyewitnesses (id. Ex. B – Sept. 27, 2001 letter from Mercado to Ann Cypher, Esq.), but rulings on the admissibility of that testimony had been vetted at a pretrial Wade hearing, and he never offered -- either in his correspondence with counsel or in his current briefing -- any viable argument that she could have been advanced on that front on his appeal.

Finally, his complaint about the leave application is well wide of the mark. First, he is not entitled to any attorney on a discretionary appeal, see Wainwright v. Torna, 455 U.S. 586, 587

_____

[7]Although respondent proffers a copy of petitioner's coram nobis motion, he has not included the exhibits annexed to that motion. We therefore cite to the complete copy, which is annexed to Mercado's petition.

31

(1982), and hence he cannot pursue a Sixth Amendment claim for omissions on a leave application. Id. At 387-88. Second, although counsel did not specify in her leave letter the grounds on which she sought review -- an omission that in some circumstances might constitute a failure to exhaust state-court remedies for purposes of later habeas review -- in this case she ultimately litigated only one claim in the Appellate Division, the Sandoval issue, thus undercutting any potential failure-to-exhaust argument in this court based on a lack of specificity in the leave application. Moreover, in any case petitioner suffered no prejudice from the attorney's lack of specificity, since he filed his own pro se leave application, in which he identified the claims for which he was seeking review. The absence of prejudice is also starkly evident from the fact that all of Mercado's claims have in fact been addressed on the merits in this habeas proceeding.


CONCLUSION


For the reasons stated, we recommend that the writ be denied and the petition dismissed with prejudice. We further recommend that a certificate of appealability be denied as petitioner has raised no issue justifying appellate review.

32

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels, Room 630, and to the undersigned's chambers, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, NY 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).

DATED:   New York, New York
         February 22, 2011


_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

33

Copies of the foregoing Report and Recommendation have been mailed this date to:

Mr. Luis Mercado
# 97-A-4519
Eastern Correctional Facility
30 Institution Road
P.O. Box 338
Naponach, New York 12458-0338

Argiro Kosmetatos, Esq.
Assistant District Attorney
 for Bronx County
198 East 161st Street
Bronx, New York 10451